# Nos. 23-7312, 24-513, 24-722, 24-749

## In the United States Court of Appeals

## for the Second Circuit

TELECOM BUSINESS SOLUTION, LLC, LATAM TOWERS, LLC, AMLQ HOLDINGS (CAY), LTD.,

*Petitioner-Appellees,*

v.

TERRA TOWERS CORP., TBS MANAGEMENT, S. DE R.L.,

*Respondent-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York
No. 1:22-cv-01761
Hon. Lewis A. Kaplan

## APPELLANTS' BRIEF

Quinn Smith
GST LLP
1111 Brickell Avenue, Suite 2715
Miami, FL 33131
O: 305-856-7723

*Attorney for Appellant*
DT HOLDINGS, INC. &
*Respondents - Appellants*
TERRA TOWERS CORP., TBS MANAGEMENT, S. de R.L.

## Corporate Disclosure Statement

Pursuant to Fed. R. App. P. 26.1, **Appellant, DT HOLDINGS, INC. &, Respondents - Appellants, TERRA TOWERS CORP., TBS MANAGEMENT, S.A.** makes the following disclosures:

1. For non-governmental corporate parties please list all parent corporations:

Telecom Construction Panamerican Limited (BVI), a private corporation, is the parent corporation of Respondents-Appellants Terra Towers Corp. and TBS Management S.A. Telecom Construction Latin America Limited (BVI), a private corporation, is the parent corporation for Appellant DT Holdings, Inc.

2. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None

Dated: September 23, 2024          By: /s/ Quinn Smith

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ......................................................... iv

GLOSSARY ................................................................... viii

APPELLANTS' BRIEF ............................................................ 1

Jurisdictional Statement ..................................................... 1

Statement of the Case ........................................................ 1

Standard of Review ........................................................... 6

Summary of the Argument ...................................................... 6

Argument ..................................................................... 8

   I.  This Court should reverse the order confirming the 2PFA ......... 8

     A.  2PFA is not a definite, final award capable of review by the Federal courts because the Arbitral Tribunal artificially imposed jurisdiction.................................... 9

        1.  2PFA is not ripe for review and invokes the exact policy concerns that call for dismissal ................................... 15

        2.  Vacatur is even more appropriate since the Arbitral Tribunal acted outside the relief requested by the parties.. 16

        3.  Vacatur of 2PFA should lead to vacatur of 3PF and 4PFA because the Arbitral Tribunal's construction of the motion for sanctions has impacted the entirety of the basis for conducting the arbitration ............. 19

     B.  2PFA is the result of evident partiality ................................. 20

        1.  A review of the facts shows that the Arbitral Tribunal displayed evident partiality ................................... 20

     C.  The Arbitral Tribunal exceeded its powers in 2PFA by creating its own rules of admission .................................... 23

   II.  This Court should reverse the order confirming 3PFA .............. 24

A. 3PFA relies on constraining the grounds of review for an award under the FAA ........................................................ 25

B. 3PFA is not definite or final ..................................................... 26

C. When the Tribunal abdicated its review powers to Appellees, 3PFA further showed evident partiality against the Terra Parties and DT Holdings ........................... 28

    1. There can be no argument to otherwise preserve 3PFA ...... 30

Conclusion ...................................................................................... 32

CERTIFICATE OF COMPLIANCE ......................................................... 33

CERTIFICATE OF SERVICE ................................................................ 34

SPECIAL APPENDIX ......................................................................... 35

# Table of Authorities

Page

**Cases:**

*187 Concourse Assocs. v. Fishman*
399 F.3d 524 (2d Cir. 2005) .......................................................... 16

*Ams. Ins. Co. v. Seagull Compania Naviera, S.A .*
774 F.2d 64 (2d Cir. 1985) ............................................................ 31

*Apple v. Jewish Hosp. Med. Ctr.*
829 F.2d 326 (1987) ...................................................................... 20

*Applied Indus. v. Ovalar*
492 F.3d 132 (2d Cir. 2007) .......................................................... 20

*ATT Techs., Inc. v. Commc'ns Workers of Am.*
475 U.S. 643 (1986) ...................................................................... 17

*Aviall, Inc. v. Ryder Sys., Inc.*
110 F.3d 892 (2d Cir. 1997) .......................................................... 11

*Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l
Union, United Auto., Aerospace & Agric. Implement Workers
of Am.*
500 F.2d 921 (2d Cir. 1974) .......................................................... 26

*Commonwealth Corp. v. Cas. Co.*
393 U.S. 145 (1968) ...................................................................... 29

*Compania Panemena Maritima v. J.E. Hurley LBR*
244 F.2d 286 (2d Cir. 1957) .......................................................... 10

*Diapulse Corp. of Am. v. Carba*
626 F.2d 1108 (2d Cir. 1980) ........................................................ 27

*Esso Exploration & Prod. Chad, Inc. v. Taylors Int'l Servs.,
Ltd.*
293 F.App'x 34 (2d Cir. 2008) ...................................................... 26

*Gas Aggregation Serv. v. Howard Avista Energy*
319 F.3d 1060 (8th Cir. 2003) ...................................................... 11

*Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*
909 F.3d 544 (2d Cir. 2018) .......................................................... 31

*Green Tree Fin. Corp. v. Bazzle*
   539 U.S. 444 (2003) ........................................................ 10

*Hall St. Assoc. v. Mattel, Inc.*
   552 U.S. 576 (2008) ............................................... 8, 15, 25

*Hoeft v. MVL Grp., Inc.*
   343 F.3d 57 (2d Cir. 2003) ............................................ 25

*In re Marine Pollution Serv., Inc.*
   857 F.2d 91 (2d Cir. 1988) ............................................ 17

*Interchem Asia 2000 v. Oceana Petrochemicals*
   373 F.Supp.2d 340 (S.D.N.Y. 2005) .............................. 23

*Kerr-McGee Ref. Corp. v. M/T Triumph*
   924 F.2d 467 (2d Cir. 1991) ............................................ 26

*Local 1199, Drug, Hosp., Health Care Emps. Union v. Brooks Drug Co.*
   956 F.2d 22 (2d Cir. 1992) ............................................ 17

*Matteson v. Ryder Sys. Inc.*
   99 F.3d 108 (3d Cir. 1996) ............................................ 17

*Metallgesellschaft A.G. v. M/V Capitan Constante*
   790 F.2d 280 (2d Cir. 1986) ............................................ 9

*Michaels v. Mariforum Shipping, S.A.*
   624 F.2d 411 (2d Cir. 1980) .............................. 9, 10, 11, 26

*Morelite v. N.Y.C. Dist. Council Carpenters*
   748 F.2d 79 (2d Cir. 1984) ............................................ 20

*N.Y. Bus Tours, Inc. v. Kheel*
   864 F.2d 9 (2d Cir. 1988) ............................................ 31

*Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*
   883 F.3d 417 (4th Cir. 2018) ........................................ 26

*Porzig v. Benson*
   497 F.3d 133 (2d Cir. 2007) ........................................ 23

*Raymond James Fin. v. Bishop*
   596 F.3d 183 (4th Cir. 2010) ........................................ 17

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*
   668 F.3d 60 (2d Cir. 2012) ............................................ 29

*Schneider v. Kingdom of Thailand*
688 F.3d 68 (2d Cir. 2012) ...................................................... 1

*Smarter Tools Inc. v. Chongqing Senci Imp. & Exp. Trade Co.*
57 F.4th 372 (2d Cir. 2023) ..................................................... 30

*Sperry Intern. Trade v. Gov't of Israel*
689 F.2d 301 (2d Cir. 1982) .................................................... 28

*Stolt-Nielsen S.A. v. Animalfeeds Intr.*
559 U.S. 662 (2010) .............................................................. 15

*Stolt-Nielsen v. Animalfeeds*
548 F.3d 85 (2d Cir. 2008) ..................................................... 10

*Swift Indus., Inc. v. Botany Indus., Inc.*
466 F.2d 1125 (3d Cir. 1972) ................................................. 28

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*
592 F.3d 329 (2d Cir. 2010) .................................................... 30

*Teamsters, Chauffeurs, Etc. v. E.D. Clapp Corp.*
551 F.Supp. 570 (N.D.N.Y. 1982) ......................................... 20

*Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.* Case No. 23–144 (2d Cir. Feb. 6, 2024) .................... 2, 6, 9, 11, 21

*Weiss v. Sallie Mae, Inc.*
939 F.3d 105 (2d Cir. 2019) .................................................... 17

*Westinghouse Elec., Etc. v. Intern. Broth*
561 F.2d 521 (4th Cir. 1977) .................................................. 17

*Williamson Farm v. Diversified Crop Ins. Servs.*
917 F.3d 247 (4th Cir. 2019) .................................................. 17

*Zeiler v. Deitsch*
500 F.3d 157 (2d Cir. 2007) .................................................... 10

*Zurich Am. Ins. Co. v. Team Tankers A.S.*
811 F.3d 584 (2d Cir. 2016) ................................................... 25

## Statutes:

9 U.S.C. § 10 ...................................................... 25, 26, 27, 29

9 U.S.C. § 203 .............................................................. 1

28 U.S.C. § 1291 ........................................................... 1

**Court Rules:**

Fed. R. Civ. P. 11  ................................................................  4, 24

# Glossary

| | |
|---|---|
| 1PFA | First Partial Final Award |
| 2PFA | Second Partial Final Award |
| 3PFA | Third Partial Final Award |
| 4PFA | Fourth Partial Final Award |
| AAA | American Arbitration Association |
| FAA | Federal Arbitration Act |
| ICDR | International Center for Dispute Resolution |

## Appellants' Brief

## Jurisdictional Statement

The Federal courts have original jurisdiction over an action or proceeding falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"), regardless of the amount in controversy. 9 U.S.C. § 203. All of the proceedings at issue seek to confirm arbitral awards that are governed by the New York Convention. This gives the Court original jurisdiction over the underlying proceedings.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because it is being tasked with reviewing an order confirming an arbitration award. *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 70 (2d Cir. 2012).

## Statement of the Case

Terra Towers Corp. ("Terra") and TBS Management, S. de R.L. ("TBS") and DT Holdings, Inc. ("DT Holdings") (collectively, the "Terra Parties") are part of a family of companies that build, operate, and maintain telecommunications towers, as well as engage in related activities. ECF 7, p. 2. The Terra Parties entered into the Shareholders Agreement with two entities owned by Peppertree Capital

Management, Inc. ("Peppertree"), Telecom Business Solution, LLC ("Telecom") and LATAM Towers, LLC ("Latam") (collectively, the "Peppertree Parties"), and one entity owned by Goldman Sachs, AMLQ Holdings (Cay) Ltd. ("Goldman"). *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, Case No. 23-144, p. 3 (2d Cir. Feb. 6, 2024) (*TBS I*). The Shareholders Agreement relates to a company called Continental Towers LATAM Holdings, Ltd. ("Continental"), an entity formed and existing under the laws of the British Virgin Islands. TBS I, p. 3. The Terra Parties own about 54.45% of Continental. ECF 92, p. 16. Together, the Peppertree Parties and Goldman own about 45.55% of Continental. *Id*.

The underlying dispute relates to the management of Continental. TBS I, p. 4. The Peppertree Parties filed for arbitration on February 2, 2021. *Id.*, p. 5. This Court is familiar with the first phase of the arbitration. On February 6, 2024, this Court issued a Summary Order affirming the confirmation a partial award, now known as the First Partial Final Award ("1PFA").

Following the issuance of 1PFA, the Terra Parties and DT Holding sought to vacate 1PFA, along with two orders issued by the arbitral tribunal, one dated November 12 and the other March 15. *Id.*, pp. 6–7. The District Court entered judgment confirming 1PFA and "held that the November 12 and March 15 orders were not judicially reviewable." *Id.*, p. 7. During the confirmation proceedings, there were "more than

2

nine months of contentious disputation between the Parties over the status" of the management of Continental." ECF 94-103, p. 3. These proceedings stemmed from an application for sanctions filed by the Peppertree Parties and Goldman. *Id*., p. 4.

The arbitral tribunal issued its "Second Partial Final Award" (the "2PFA") on August 12, 2022. *Id*., pp. 55-58. The arbitral tribunal "determined to issue [its] ruling on Claimants' application for sanctions in the form of a partial final award[.]" *Id*., p. 4. The Peppertree Parties and Goldman did not request a partial final award. Rather, they submitted a Proposed Interim Order that would "not constitute a final or partial final award." ECF 106-34, p. 3. This Proposed Interim Order was an attachment to the application for sanctions that formed the genesis of 2PFA. ECF 94-74, p. 7. The Arbitral Tribunal decided to issue a partial final award and listed five reasons, finding that "finality with regard to the status of Executive Management is desirable," it would "best for this arbitration" to decide Appellants' arguments regarding the Tribunal's jurisdiction to enforce its November 12 and March 15 orders, it appeared "important" for "any of the Parties" to seek "interlocutory judicial consideration" of a separate jurisdictional objection that gave rise to the application for sanctions, Appellants' allegations of evident partiality "should be judicially determined at the earliest opportunity," and a belief that the "motion for sanctions presents a 'separate and

independent' claim" that resulted in "measures" awarded "as sanctions" that do not require "any additional action by the Tribunal." ECF 94-103, pp. 4–5.

The arbitral tribunal then awarded, "as sanctions under AAA Commercial Rule R-58, a stay of proceedings on Respondents' counterclaims until such time as Respondents fully comply with our prior orders (the 'Stay Sanction')." *Id*., p. 5. Other sanctions included "a prohibition" on Appellants "asserting claims or defenses based on the conduct of senior management of the Company up to the date of this Award." *Id*. The sanctions went on to require "lead counsel to be designated by Respondents and for such lead counsel to make all submissions on Respondents' behalf with undertakings equivalent" to Federal Rules of Civil Procedure 11, as well as "a monetary award for fees of the Tribunal with interest." *Id*. The arbitral tribunal stated that the Stay Sanction "excludes, with finality, conditions for the lifting of the stay other than those stated in [the] Award." *Id*. The arbitral tribunal purported to retain its power to lift the stay "and to determine if the conditions for lifting the stay are met." *Id*. On September 16, 2022, the Peppertree Parties and Goldman petitioned the District Court to confirm 2PFA. ECF 92.

Following 2PFA, the arbitration continued, and Continental notified the arbitral tribunal on January 3, 2023, of an arbitration filed in Peru. ECF 133-47, p. 3. The case is against Continental and the Peppertree

Parties and filed by Continental's "Peru-based, Peru-organized, wholly owned indirect subsidiaries, and the Company Managers of those subsidiaries as co-Claimants." *Id.*, p. 4. The arbitral tribunal granted leave to the Peppertree Parties and Goldman to file an application for interim relief. *Id.*, p. 5. The application sought an ant-suit injunction, among other remedies. *Id.*, pp. 5-6.

After written submissions and oral argument, the arbitral tribunal ordered Respondents in the arbitration to "cause the Foreign Arbitrations to be terminated within 10 days of the date of this Award," submit proof "of the termination of the Foreign Arbitrations," prevent the "commencement of any similar Foreign Arbitration or other legal proceeding involving all or any of the subject matter" of the counterclaims in the arbitration, and refrain from presenting "in any forum as an excuse for non-compliance . . . that their efforts to bring about termination of the Foreign Arbitrations . . . were appropriate but unsuccessful." *Id.*, pp. 43–44. There was an order to pay the fees and expenses of the Peppertree Parties, Goldman, and Continental, as well as "indemnify and hold harmless" those same parties. Failure to terminate the arbitrations and notify the arbitral tribunal carried a penalty of depositing in escrow, upon terms acceptable to the Peppertree Parties and Goldman, USD 41,416,371.17. *Id.*, p. 44. The

arbitration respondents could only regain the escrowed funds "upon proof satisfactory" to the Peppertree Parties and Goldman of termination of the Foreign Arbitrations. *Id*.

The arbitration is now approaching what will likely be the conclusion of Phase 2. There was a hearing on the merits from July 9–12, 2024, and the first round of written, post-hearing submissions on August 30, 2024. There will be a second round of written, post-hearing submissions on September 28, 2024, and oral closing arguments on October 9, 2024.

## Standard of Review

The proper review of a district court's decision to confirm or vacate an arbitration award is *de novo* for questions of law. TBS I, p. 7 (citing authorities). Findings of facts are reviewed for clear error. *Id*.

## Summary of the Argument

The Federal Arbitration Act (the "FAA") provides flexibility for the parties to craft many of the elements of the dispute resolution process. But the arbitral tribunal in this case has gone too far. The arbitral tribunal has attempted to create jurisdiction in the Federal courts where none exists, conflicting with binding precedent and imposing a mishmash of divergent obligations on the Terra Parties. Evident partiality infuses the partial final awards, highlighted by the arbitral tribunal abdicating its authority so that the Peppertree Parties and

6

Goldman are in charge of compliance. This is an arbitration that requires a firm message from this Court to preserve the proper remit of arbitral tribunals and their interim awards.

The Court should reverse the Endorsed Order confirming 2PFA and rejecting its vacatur because 2PFA is not a definite, final award capable of review as an interim award. The arbitral tribunal took a motion for sanctions and decided that it would be best for the District Court to review the arbitral tribunal's partiality, exercise of jurisdiction, and requirement of compliance with preliminary orders. This dramatically expands the scope of an enforceable interim award. This Court has only allowed review of interim awards in limited circumstances, requiring a ruling on an independent claim that, absent of the parties' agreement, resolves both liability and damages. This Court has rejected interim review of an arbitral tribunal's partiality. 2PFA undoes this precedent. In the process, 2PFA raises serious issues of ripeness, decides on relief not requested by the parties or permissible under the applicable rules, and creates a basis for 3PFA and 4PFA, leading to the vacatur of those awards, too. 2PFA is also the result of evident partiality. The arbitral tribunal refused to consider evidence submitted by the Terra Parties, made the case of the Peppertree Parties and Goldman by imposing unrequested relief, required compliance by the Terra Parties with orders they could not contest, prejudged crucial facts under the review and direction of foreign criminal authorities, and struck the testimony

of a witness based on the erroneous assumption that the arbitral tribunal called him. Finally, 2PFA contains idiosyncratic rules of admission concocted by the arbitral tribunal without any authority.

3PFA should be vacated for different reasons. 3PFA expands the grounds for review by relying on a different body to decide evident partiality, and it is not definite or final because it relies on an ongoing interpretation of facts and law that are monitored by the Peppertree Parties and Goldman. This conferral of authority is yet another sign of evident partiality. The only solution for 3PFA is vacatur, which would require a similar ruling as to 4PFA.

## Argument

## I. This Court should reverse the order confirming the 2PFA

The arbitral tribunal went astray when it decided, based on its own prudential considerations, to create an interim award and thus judicial review. This is more than the FAA can bear. Sections 9 to 11 substantiate "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assoc. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). In what might be a first, the Arbitral Tribunal took it upon itself to create the conditions for limited review, displaying evident partiality, and derailing the underlying arbitration in the process.

### A. 2PFA is not a definite, final award capable of review by the Federal courts because the Arbitral Tribunal artificially imposed jurisdiction

When this Circuit first authorized the confirmation of interim arbitral awards, it reasoned that "[i]t would be a perversion" of the purpose of arbitration to deny a party "the same prompt and commercially important relief from an arbitration panel that it could have received from a court." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d Cir. 1986). The claim for liability and damages was then confirmed because it "was independent and separate," could be finally determined without reference to legally irrelevant issues, and complied with the congressional intent to enforce the agreement into which the parties have entered. *Id.* In other words, confirmation is only appropriate where the award "finally and conclusively" disposes of "a separate and independent claim" that is not "subject to [either] abatement [or] set-off." *Id.* at 283.

Numerous partial final awards have come to the Federal courts since then, but not all things styled as an award are reviewable. "Policy considerations, no less than the language of the Act and precedent construing it, indicate that district courts should not be called upon to review preliminary rulings of arbitrators." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980); *see also Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, slip op. at 11

(November 12 and March 15 orders unreviewable because they did not conclusively resolve the issues raised and contemplated further proceedings on the sufficiency of compliance). A district court is not an "appellate tribunal" to resolve interim issues during an ongoing arbitration because such applications "result only in a waste of time" and "the interruption of the arbitration proceeding." *Michaels v. Mariforum Shipping, S.A.*, at 414, *citing Compania Panemena Maritima v. J.E. Hurley LBR*, 244 F.2d 286, 288–89 (2d Cir. 1957).

There are limited situations where this Court has reviewed partial final awards that the parties agreed to submit to the arbitral tribunal. For example, in response to the Supreme Court's ruling in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452–53 (2003), the American Arbitration Association (the "AAA") issued Supplementary Rules to deal with issues of class arbitration. *Stolt-Nielsen v. Animalfeeds*, 548 F.3d 85, 88 n.2 (2d Cir. 2008). This Court then reviewed the partial award in *Stolt-Nielsen* "[b]ecause the parties specifically agreed that the arbitration panel would decide whether the arbitration clauses permitted class arbitration[.]" *Id.* at 101. Where this Circuit has enforced interim orders, they are based on the parties' dispute resolution framework and "require specific action and do not serve as a preparation or a basis for further decisions by the arbitrators." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). That being said, there are certainly restrictions, some of which apply in this case.

The FAA "does not provide for pre-award removal of an arbitrator." *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997). "[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Id.*, *citing Michaels v. Mariforum Shipping, S.A.*, 624 F.2d at 414 n. 4 (further citations omitted). Vacatur is also appropriate where an award relies for its content on future judicial decisions. *Gas Aggregation Serv. v. Howard Avista Energy*, 319 F.3d 1060, 1069 (8th Cir. 2003).

2PFA falls far outside the bounds of a partial final award that can be confirmed in this Circuit. 2PFA is the result of a decision by the arbitrators, not the parties, to convert a motion for sanctions into a partial "award." There is no evidence that any of the parties sought this relief. 2PFA went even further. The arbitral tribunal opted for interim review of its own evident partiality, precisely the kind of relief not available on an interim basis. ECF 94-103, p. 54. If the Terra Parties could not ask the District Court to remove the arbitral tribunal, then the arbitral tribunal certainly could not create an interim award that only the Peppertree Parties and Goldman could enforce. And 2PFA converts the November 12 and March 15 Orders into enforceable elements of an interim partial award. *Id.* This Court has already found that the Terra Parties cannot challenge those orders. *Telecom Business Solution, LLC, et al. v. Terra Towers Corp., et al.*, slip op. at 11). But

11

now 2PFA forces the Terra Parties to comply with rulings they cannot challenge, along with three other procedural orders. ECF 94-103, p. 54.

The non-final nature of 2PFA effectively deprives the Terra Parties of grounds of vacatur while making compliance mandatory. The Terra Parties cannot contest the excess of powers in Procedural Order 2022–08 (a ruling the arbitral tribunal expressly described as not an award), where the arbitral tribunal authorized the retention of a law firm outside of the terms of the applicable agreement. The Terra Parties cannot challenge the November 12 and December 8 Orders as exceeding the arbitral tribunal's powers or violating public policy by requiring the Terra Parties to dismiss foreign criminal proceedings that have yielded indictments and are controlled by government authorities in other jurisdictions. This result cannot stand.

There are other problems with 2PFA. Unlike a typical interim award, 2PFA did not grant a separate and independent claim for relief. The motion for sanctions did not seek compensation for any failure to sell Continental or any of the various derivate claims brought by the Terra Parties and Goldman. There is no reasonable connection between the motion for sanctions and the statement of claim (similar to a complaint) pending before the arbitral tribunal. 2PFA provides all the evidence necessary to prove the point: the statement of claim makes no appearance in 2PFA.

2PFA also mixes and matches the compliance required, drifting in and out of the prerequisites for an enforceable interim award. 2PFA requires full adherence to 1PFA, even though 1PFA is a judgment. To the extent the Peppertree Parties and Goldman seek to enforce the judgment in the British Virgin Islands, where Continental is domiciled, another court will control compliance, not the Federal courts or the arbitral tribunal. And because 1PFA stipulates a sale of the Company that requires the cooperation of all shareholders, any compliance by the Terra Parties requires assistance from their adversaries, putting the Peppertree Parties and Goldman in the position of fashioning the Terra Parties' compliance with 1PFA and 2PFA. Then there are the five different procedural orders. ECF 94-103, p. 54. This Court has found that two of these orders are not subject to challenge, but now they are the basis of compliance with 2PFA and a condition to lift the stay imposed. And the arbitral tribunal has retained jurisdiction over 2PFA even as it sent the instrument off for judicial review. By way of a separate preliminary ruling, one that is certainly not a partial, final award, the arbitral tribunal wants to change the terms of a stay it as entered whose conditions are now a court judgment. The entire framework is a mess and nothing like definite, final resolution of an independent claim for relief.

There are also numerous assumptions underlying 2PFA that are still subject to determination by other courts. For example, 2PFA makes

13

findings regarding the propriety of Mr. Gaitan's activities in Panama and Guatemala (ECF 94-103, p. 10-12, 21, 25-27, 29-30, 32-42), matters that are now before criminal courts in El Salvador and Guatemala. Those courts have issued indictments, and in El Salvador, the courts have issued a "red notice" to Interpol in large part because Mr. Gaitan has not appeared for mandatory court proceedings. 2PFA recognizes that the foreign criminal cases are pending, but it makes "final," exculpatory findings of fact in cases whose results are pending and tilting towards guilty verdicts.

The policy rationale underlying *Metallgesellschaft* is conspicuously absent from the confirmation of 2PFA. There was no final ruling on liability or damages of any claim, and 2PFA is deeply connected to a host of legally relevant issues to the resolution of the dispute. With its array of conflicting requirements, 2PFA has effectively stricken the Terra Parties' counterclaims, making 2PFA inextricably relevant to the resolution of the dispute without actually resolving it. And there can be little argument that 2PFA complies with the congressional intent to enforce the parties' agreement since none of the parties requested an interim award. Instead of making arbitration a more efficient form of dispute resolution based on the Shareholders Agreement and its incorporation of the AAA Rules, the arbitral tribunal has gone the opposite way.

### 1. 2PFA is not ripe for review and invokes the exact policy concerns that call for dismissal

The dissent in *Stolt-Nielsen* cautioned about the sorts of partial awards now under review by this Court, stating that "[i]t cannot be true . . . that parties or arbitrators can gain instant review by slicing off a preliminary decision or a procedural order and declaring its resolution a 'partial award.'" *Stolt-Nielsen S.A. v. Animalfeeds Intr.*, 559 U.S. 662, 691 (2010), *citing Hall St. Assoc. v. Mattel, Inc.*, 552 U.S. at 588. The majority took this as an argument regarding ripeness and dismissed it, reasoning that the petitioner would face a motion to compel arbitration for refusing to participate and that the respondent had waived the ripeness argument. *Stolt-Nielsen S.A. v. Animalfeeds Intr.*, 559 U.S. 662, 671 n.2 (2010). The majority expressed no view on a similar ripeness argument that may arise. *Id.*

2PFA triggers the dissent's concerns without meeting the majority's criteria for review. 2PFA slices off a preliminary decision on the continued participation of executive management, the legal doctrine of *functus oficio*, the arbitral tribunal's jurisdiction over third parties and compliance with certain preliminary rulings, and the arbitral tribunal's evident partiality. At the same time, non-compliance by the Terra Parties with these orders does not lead to a motion to compel

arbitration. Indeed, the arbitral tribunal has continued in spite of the objections raised by the Terra Parties. And the Terra Parties have not waived the ripeness argument, squarely placing it before this Court.

This Court therefore has the opportunity to decide if arbitral tribunals can dictate when the Federal courts review partial awards. The question is certainly compelling. Should an arbitral tribunal invoke the jurisdiction of a District Court because "finality . . . is desirable," "it is best for this arbitration," "appears important to the effectiveness of the ongoing arbitration," or bears on a question that "should be judicially determined?" ECF 94-103, pp. 4–5. The answer to those questions runs contrary to this Circuit's precedent on review of partial awards and shows that 2PFA has stretched the FAA much farther than its reasonable bounds. The District Court is not a forum for interlocutory review based on what an arbitral tribunal thinks is best. The Court should reject this reading of the FAA and remand with instructions to vacate 2PFA.

### 2. Vacatur is even more appropriate since the Arbitral Tribunal acted outside the relief requested by the parties

Arbitration is a creature of contract, and the arbitral tribunal's authority is limited by the contract and the questions submitted by the parties for arbitration. *187 Concourse Assocs. v. Fishman*, 399 F.3d 524,

527 (2d Cir. 2005). Arbitrators cannot impose obligations outside the contract. *ATT Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). "The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration and is determined by the agreement or submission." *Local 1199, Drug, Hosp., Health Care Emps. Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992). As one circuit has reasoned, vacatur is appropriate where the arbitral tribunal decides issues not submitted to it. *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 115 (3d Cir. 1996). The arbitrator also cannot depart in favor of a concern for equity, which would be little more than the arbitral tribunal's own brand of industrial justice. *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 96 (2d Cir. 1988); *see also Westinghouse Elec., Etc. v. Intern. Broth*, 561 F.2d 521, 524 (4th Cir. 1977) (affirming vacatur for awarding relief not warranted in underlying agreement). As another circuit has held, granting relief outside that allowed in the arbitration rules is an excess of powers. *Raymond James Fin. v. Bishop*, 596 F.3d 183, 193 (4th Cir. 2010). Stated another way, an arbitral tribunal cannot discard the parties' agreement in favor of its own policy preferences. *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 110 (2d Cir. 2019); *see also Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247, 257 (4th Cir. 2019) (affirming vacatur where arbitrator exceeded powers by awarding relief not permitted in agreement).

2PFA far exceeds the terms of the rules selected by the parties and the relief available. The Shareholders Agreement incorporates the Commercial Arbitration Rules of the AAA "in effect at the time of the arbitration[.]" ECF 94-1, p. 51. 2PFA awarded, "as sanctions under AAA Commercial Rule R-58," the items listed in the operative part of the document. ECF 94-103, pp. 53–54. Rule 58(a) states that "[t]he arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator." Rule 58(b) requires the arbitral tribunal to "provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application." There must, therefore, be "a party's request" and sanctions based on non-compliance with the AAA rules or an order from the arbitral tribunal. The AAA Rules also require notice and an opportunity to be heard. 2PFA fails to adhere to these limitations.

Applying its own brand of industrial justice, 2PFA is the result of the arbitral tribunal's prerogatives. The Peppertree Parties and Goldman did not request a partial award or any of the non-monetary sanctions, including the stay and the regulation on admission of counsel. Instead, the arbitral tribunal acted according to its notion of what was best for the arbitration. Rule 58 does not apply to compliance with an arbitral award, but that is precisely what 2PFA requires. Rule 58 mandates that

18

the Terra Parties know of the sanctions request and have the opportunity to respond, which certainly cannot happen when 2PFA granted relief not even requested by the Terra Parties or Goldman. 2PFA was thus an excess of powers granted to the arbitral tribunal.

### 3. Vacatur of 2PFA should lead to vacatur of 3PF and 4PFA because the Arbitral Tribunal's construction of the motion for sanctions has impacted the entirety of the basis for conducting the arbitration

The improper creation of 2PFA and the excess of powers in the relief granted has derailed the entire process. Not only did the 2PFA proceedings add months to the proceedings and impose heavy costs on the parties, 2PFA is the basis for, and has irrevocably tainted, 3PFA. In 3PFA, the arbitral tribunal found that the "interim measures sought by" the Peppertree Parties and Goldman were "in aid of the effectiveness of relief" in 1PFA and 2PFA. ECF 133-47, p. 31. The "irreparable injury" analyzed in 3PFA is, in part, the petition to vacate 2PFA. *Id.*, pp. 35–36. The arbitral tribunal rejected the Terra Parties' defenses based, largely, on the existence of 2PFA. *Id.*, p. 42. In essence, the arbitral tribunal saw the Foreign Arbitrations as essentially an end-run around 2PFA. *Id.*, p. 4. 2PFA is thus a cornerstone of 3PFA and the costs and fees award in 4PFA. Vacatur of 2PFA would undermine 3PFA and 4PFA such that all three must be vacated at once.

### B.   2PFA is the result of evident partiality

An arbitrator is not held to the same standard as a judge, who can be disqualified where its impartiality might reasonably be questioned. *Applied Indus. v. Ovalar*, 492 F.3d 132, 137 (2d Cir. 2007), *citing Apple v. Jewish Hosp. Med. Ctr.*, 829 F.2d 326, 332–33 (1987). This does not mean that the parties should expect a biased arbitrator. "Evident partiality" exists "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite v. N.Y.C. Dist. Council Carpenters*, 748 F.2d 79, 84 (2d Cir. 1984). Evident partiality can include refusal to hear evidence pertinent and material to the controversy. *See, e.g., Teamsters, Chauffeurs, Etc. v. E.D. Clapp Corp.*, 551 F.Supp. 570, 578 (N.D.N.Y. 1982)

The Terra Parties do not disagree with the limitations on seeking removal of the arbitral tribunal on an interim basis, as discussed above in Section I(A). But where the arbitral tribunal has improperly created 2PFA as a basis to obtain judicial review on its own partiality, an argument the District Court accepted, the Terra Parties must therefore respond.

### 1.   A review of the facts shows that the Arbitral Tribunal displayed evident partiality

In its Endorsed Order, the District Court does not engage with the numerous objective facts showing evident partiality in relation to 2PFA,

relying instead on briefing from the Peppertree Parties and Goldman, prior orders, and this Court's order on 1PFA. ECF 207, p. 2. As it relates to evident partiality and 2PFA, this means that the District Court did not rely on this Court's order, which dealt only with evident partiality in Phase 1, not facts following 1PFA. TBS I, p. 6. And it did not rely on the referenced orders, each of which merely enforces another partial final award: 1PFA (ECF 124), 3PFA (ECF 182), and 4PFA (ECF 202). ECF 207, p. 2. This leaves the Court with only the briefing of the parties.

The Terra Parties provided the below facts:

- The arbitral tribunal refused to consider evidence submitted by the Terra Parties. 2PFA claims that the Terra Parties submitted no arguments on Panamanian law. ECF 94-103, p. 38, n. 21. The Terra Parties made arguments and submitted a supporting legal opinion from a Panamanian firm. ECF 106-21, p. 12.
- The arbitral tribunal impermissibly made the case of the Peppertree Parties and Goldman. 2PFA imposes severe sanctions on the Terra Parties, despite there being no request from the Peppertree Parties and Goldman.
- The arbitral tribunal issued relief that gave the Peppertree Parties and Goldman the ability to confirm 2PFA while preventing the Terra Parties from challenging the terms of compliance. 2PFA makes five procedural orders binding as an award on the Terra Parties without allowing them to challenge the Procedural Orders as interim awards.

- The arbitral tribunal prejudged the facts underlying its decision. 2PFA prejudges the merits of the foreign criminal proceedings that impacted its view of the Terra Parties' reasons for seeking removal of Continental's CEO and COO.

- The arbitral tribunal twisted the evidence in favor of the Peppertree Parties and Goldman, reaching conclusions on a key fact. 2PFA incorrectly states that the arbitral tribunal called a witness, Mario Roberto Mendez Alvarez, who then failed to appear. ECF 94-103, pp. 19-20. The arbitral tribunal struck the testimony offered by the witness based on this error, although the arbitral tribunal never called the witness. ECF 94-82, p. 5. This misconduct only affected the Terra Parties.

The briefing by the Peppertree Parties and Goldman largely addresses other issues

The Peppertree Parties and Goldman took up the allegations of evident partiality by viewing them as untimely (ECF 112, pp. 11–12), referencing an excess of powers argument (ECF 112, pp. 13), arguing a failure to show irreparable harm (ECF 112, pp. 12–13), or arguing something akin to manifest disregard (ECF 112, pp. 14–15). Other arguments went to propriety of discovery rulings (ECF 112, pp. 16–18), the circumstances surrounding allegations of bribery (ECF 112, pp. 18–20), and the disclosures by the arbitrators (ECF 112, pp. 19–21). The arguments regarding the text of 2PFA largely addressed other issues, except for the criminal proceedings. ECF 112, pp. 21–25.

On this last point, the Peppertree Parties and Goldman defended the 2PFA for properly making findings of fact because "the complaints

lacked merit." ECF 112, p. 24. This is a serious issue. Dismissal of the foreign criminal proceedings has not, in fact, occurred. Rather, the courts in El Salvador and Guatemala have indicted Mr. Gaitan. 2PFA prejudged those facts, and in doing so, coupled with the other instances of evident partiality, the arbitral tribunal rendered an award that should be vacated.[1]

### C. The Arbitral Tribunal exceeded its powers in 2PFA by creating its own rules of admission

"The mere fact that an arbitral panel may have interactions with both a party and the party's lawyer based on the lawyer's representation of the client before the panel does not give the panel a long arm to exercise jurisdiction over the attorney-client relationship." *Porzig v. Benson*, 497 F.3d 133, 140 (2d Cir. 2007). Indeed, as one District Court has opined, the arbitral tribunal does not have inherent authority to sanction counsel. *Interchem Asia 2000 v. Oceana Petrochemicals*, 373 F.Supp.2d 340, 359 (S.D.N.Y. 2005).

The arbitral tribunal exceeded its authority, rendering 2PFA in direct conflict with this Court's precedent. The arbitral tribunal did not have the power to require counsel to be personally bound by the

---

[1] The Peppertree Parties and Goldman make a passing reference to the disqualification decision and argue it should be binding. ECF 112, p. 18. This is incorrect. As addressed below in Section II(A), the District Court cannot rely on any notion that the parties contracted for an evident partiality review by the ICDR.

jurisdiction of the arbitral tribunal. But 2PFA forces counsel to submit to the arbitral tribunal's jurisdiction through an undertaking similar to Federal Rules of Civil Procedure 11. This can only mean that the arbitral tribunal considers it can sanction the attorneys and their firms and make them personally responsible for costs and fees. Assertion of this kind of authority is outside the jurisdiction of any arbitral tribunal. Similarly, the arbitral tribunal lacks the power to condition the appearance of counsel on arbitrary rules of experience, especially when those rules are applicable only to the Terra Parties. 2PFA is an exercise of unchecked power by an arbitral tribunal whose authority comes from a contract, not the considered voice of the legislature or the will of the people as expressed in the US Constitution, and this Court should vacate.

## II.  This Court should reverse the order confirming 3PFA

3PFA suffers from different problems than 2PFA, but the arbitral tribunal still failed to render an interim award that complied with the requirements to merit review under the FAA, and the District Court improperly relied on the ICDR's disqualification decision, same as with 2PFA.

### A. 3PFA relies on constraining the grounds of review for an award under the FAA

The Supreme Court has held, in reference to Chapter One of the FAA, "that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." *Hall St. Assoc. v. Mattel, Inc.*, 552 U.S. at 579. The Circuit has similarly written that "[p]arties seeking to enforce arbitration awards through federal-court confirmation judgments may not divest the courts of their statutory and common-law authority to review both the substance of the awards and the arbitral process for compliance" with 9 U.S.C. section 10. *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016), *citing Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 66 (2d Cir. 2003), *abrogated on other grounds by Hall St. Assoc. v. Mattel, Inc.*, at 584–85.

The District Court modified the review available under an evident partiality challenge by essentially deferring to the ICDR's finding on disqualification. ECF 182, pp. 13–14. This was inappropriate. The ICDR's conclusion is not binding on this Court and is not a basis for denying a defense of evident partiality. The District Court's conclusory assertion that there are no "objective facts" is insufficient, especially when there is no analysis of the argument. As shown below, bias is more than apparent based on the text of 3PFA. This Court should

therefore reverse for the District Court to make its own determination on evident partiality, not merely adopt that of ICDR, subject to the further directions based on evident partiality in Section II(C).

## B.  3PFA is not definite or final

Courts will not enforce an award that is incomplete, ambiguous, or contradictory. *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 500 F.2d 921, 923–24 (2d Cir. 1974). Normally, an award is "final and definite" under 9 U.S.C. § 10(d) when the arbitrator decides both liability and damages on the claims presented. *Esso Exploration & Prod. Chad, Inc. v. Taylors Int'l Servs., Ltd.*, 293 F.App'x 34, 36 (2d Cir. 2008), *citing Michaels v. Mariforum Shipping, S.A.*, 624 F.2d at 413–14 ("Generally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages."). The award cannot rule on the issue of liability and partial damages but leave open the question of damages. *Kerr-McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991); *see also Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*, 883 F.3d 417, 423 (4th Cir. 2018) (award not final where tribunal could modify underlying assumptions).

3PFA fails to meet this criteria. 3PFA sets up an ongoing interpretation of facts and law that are contrary to the finality needed

to invoke the jurisdiction of the Federal courts. Specifically, 3PFA creates an escrow account valued at USD 41,416,371.17, supposedly representing half of the damages in the Foreign Arbitrations. ECF 133-47, p. 44. 3PFA does not disclose where that number comes from, other than a generic amount based on claims in other proceedings that can change. 3PFA then does not allow for any modification of the amount. The Foreign Arbitrations are still in process, and in some cases name the Terra Parties as respondents. The amounts in controversy vary and have led to different results. The bond thus establishes an open question of damages, one that only the Peppertree Parties and Goldman are free to modify.

There are other problems with 3PFA. As an interim award establishing injunctive relief, 3PFA receives distinct treatment. Where an arbitral tribunal issues an injunction in the form of an award, this Court has required that the judgment entered on the award must be framed such that those who must obey the injunction will know "what the court intends to forbid." *Diapulse Corp. of Am. v. Carba*, 626 F.2d 1108, 1111 (2d Cir. 1980). The award must have sufficient "specificity and definiteness" in order to "withstand appellate scrutiny." *Id.* Failing such standard, 9 U.S.C. section 10 provides that the award is insufficiently definite and should be vacated. *Diapulse Corp. of Am. v. Carba*, at 1111. The issue of a bond presents particularly thorny issues. The Third Circuit faced such a case, affirming vacatur of an award that

imposed a cash bond to cover a liability that had yet been incurred. *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1133 (3d Cir. 1972). The Third Circuit considered the absence of any provision in the agreement that would provide security for either party against breaches by the other. *Id.* And where the agreement deals with money held as a bond, the ruling must keep the money in the name of "both parties until the contract disputes are determined." *Sperry Intern. Trade v. Gov't of Israel*, 689 F.2d 301, 306 (2d Cir. 1982)

3PFA creates an impossible situation for the Terra Parties. 3PFA requires termination of the Foreign Arbitrations, but in the event that the local subsidiaries refuse to comply, the Terra Parties and DT Holdings have to post a shifting amount of money according to terms that the Peppertree Parties and Goldman, not the Tribunal, can impose. ECF 133-47, p. 44. There is no authority in the Shareholders Agreement to impose such conditions, and the money is held exclusively for the benefit of one set of parties. *Id*. These conditions are inconsistent with an enforceable interim award for injunctive relief.

### C. When the Tribunal abdicated its review powers to Appellees, 3PFA further showed evident partiality against the Terra Parties and DT Holdings

The result of 3PFA is unmistakable evident partiality. The evident-partiality standard is, at its core, directed to the question of bias.

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 73 (2d Cir. 2012). It was "[not] the purpose of Congress to authorize litigants to submit their cases and controversies" to arbitrators who are "biased against one litigant and favorable to another." *Commonwealth Corp. v. Cas. Co.*, 393 U.S. 145, 150 (1968) (Black, *J.*) (plurality opinion), the FAA provides for vacatur of arbitral awards whenever it is "evident" that an arbitrator was "partial[ ]" to one of the litigating parties. 9 U.S.C. § 10(a)(2).

3PFA puts the Peppertree Parties and Goldman in charge of compliance, the clearest sign of evident partiality. 3PFA requires the Terra Parties to pay the invoices of the Peppertree Parties and Goldman "upon presentation of invoices," giving a blank check to the Peppertree Parties and Goldman to bill almost any amount they like. ECF 133-47, p. 44. The Terra Parties must establish an escrow account "upon terms acceptable to the Claimants[.]" *Id*. The Peppertree Parties and Goldman are thus free to appoint themselves as escrow agent, act unreasonably or in their own self-interest, require that they receive all interest and fees on the escrow account, provide investment directions for the escrowed funds that give a greater benefit to them, and withhold any return of the funds based on unresolved, and incorrect, claims of set-off. Any release of the escrowed funds to the Terra Parties, "in whole

29

or in part," can only be made "upon proof satisfactory to the Claimants[.]" *Id*. Again, the Peppertree Parties and Goldman are free to establish their own standards for compliance that benefit only them.

These terms are precisely the kind of arbitration that the Terra Parties should not expect. No party to an arbitration should be forced to submit to its adversary's discretion. 3PFA is especially egregious because this arbitral tribunal will weaponize a supposed lack of compliance to extreme ends. As 2PFA and 3PFA demonstrate, the arbitral tribunal is more than willing to impose sanctions that exceed the jurisdiction of the arbitral tribunal, prejudge the underlying facts, and curtail the Terra Parties' counterclaims. 3PFA essentially assures this outcome by abdicating to the Peppertree Parties and Goldman the role of monitoring compliance with 3PFA.

### 1. There can be no argument to otherwise preserve 3PFA

"The *functus officio* doctrine dictates that, once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, their authority over those questions is ended, and the arbitrators have no further authority, absent agreement by the parties, to redetermine those issues." *Smarter Tools Inc. v. Chongqing Senci Imp. & Exp. Trade Co.*, 57 F.4th 372, 379 (2d Cir. 2023), *citing T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010) (internal

quotation marks and alterations omitted). There are exceptions when the award is ambiguous. *See N.Y. Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 12 (2d Cir. 1988). Or when the award is indefinite. *Ams. Ins. Co. v. Seagull Compania Naviera, S.A .*, 774 F.2d 64, 67 (2d Cir. 1985) (citations omitted). Another exception includes a failure "to address a contingency that later arises or when the award is susceptible to more than one interpretation." *Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 548 (2d Cir. 2018) (internal quotation marks omitted).

While the Terra Parties dispute the definiteness or finality of 3PFA, the arbitral tribunal saw things differently. The arbitral tribunal purported to fully exercise its authority in 3PFA, and in the process rendered itself *functus oficio* to oversee compliance with 3PFA. This leaves it incapable of taking compliance back from the Peppertree Parties and Goldman. The only solution is vacatur.

## Conclusion

Based on the foregoing reasons, the Terra Parties request that this Court reverse the orders confirming the 2PFA, 3PFA, and 4PFA and remand with instructions to vacate.

GST LLP

Respectfully submitted,

Dated: September 23, 2024    By: /s/ Quinn Smith

Attorney for Appellant
DT HOLDINGS, INC. &
Respondents - Appellants
TERRA TOWERS CORP., TBS
MANAGEMENT, S. de R.L.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **7,108 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: September 23, 2024          By: /s/ Quinn Smith

## Certificate of Service

I hereby certify that I electronically filed the foregoing **APPELLANTS' BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on **September 23, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

GST LLP

Respectfully submitted,

Dated: September 23, 2024    By: /s/ Quinn Smith

Attorney for Appellant
DT HOLDINGS, INC. &
Respondents - Appellants
TERRA TOWERS CORP., TBS
MANAGEMENT, S.A.